Please be seated. Would the clerk call the next case, please? Case number 3-14-0144, George Vrakas v. County of Will, Oak County Sheriff's Office, Appalachias, by Lawrence Weiner. Ms. Angelucci, good afternoon. Good afternoon, Justice McDade. My name is Margaret Angelucci, appearing on behalf of the Plaintiff Appellants in this case. Before delving into interpreting the statutes and the case law and all of the facts in this case, I think the court should focus on the statutory construction principle that we should avoid absurd results. With that charge in mind, before we start going into all of the details, I think it's important to focus on what the case is at its core. And this case is simply about public employees being treated differently for no apparent reason. And if you don't mind, Your Honors, I'd like to use you as an example for illustrative purposes. Now the justice is sitting to your left or your right, hired under the exact same statutory framework, working side-by-side with you every day, hearing the same cases, issuing the same decisions, given the same constitutional and statutory authority, without regard to any seniority, would be receiving a higher pension than you. We do not believe that the legislature intended any such arbitrary outcome in this case. And we ask that you keep that in mind when considering the arguments raised by the defendants in this case. I'd like to quickly address first... Actually, that's possible if you have a newly elected judge. We have a two-tier pension system now, so it's very possible to have... But if you're hired under the same statutory framework, that's what I was referring to. Which was not, they didn't have a two-tier system in the plaintiff's case. In any event, I would like to quickly address the defendant's argument that plaintiffs have no cause of action because they were not members of SLEP during the relevant period of time. But that's precisely why we are before you today. The claim that the plaintiffs are making is that they were not properly classified during all relevant periods of time, and that due to that misclassification, they were denied access to or eligibility for membership in the SLEP plan. The defendants asked this court to grant them a reward for this misclassification, and we ask that this court deny the defendant's request in that regard. The next argument raised by the defendants as to why the plaintiffs are not eligible for the heightened SLEP benefit is that they were not, quote-unquote, sheriff's law enforcement employees under the pension code. Unfortunately, the pension code provides very little guidance as to how to define sheriff's law enforcement employees other than you have to be employed as a full-time deputy. Defendants argue that you have to look at other statutes for interpretive guidance. We agree you should look at other statutes for interpretive guidance. The defendants, however, want you to look at one statute and one statute only, and that's the county's code. They say you should look at other statutes for interpretive guidance, but at the same time they argue that the statutes referred to by the plaintiffs for interpretive guidance should be entirely ignored. The court should look to all outside guidance, including the county's code, but regardless of the statutes that you are referring to or relying on, the end result is exactly the same, and that is that the plaintiffs were, and currently are, sheriff's law enforcement employees under the pension code. Whenever it suited the defendants to define the plaintiffs as sworn or as law enforcement employees, they were the first to do so. Under the Illinois Police Training Act, the defendants defined the plaintiffs as correctional, sworn correctional officers. Under their very own merit commission rules, rules that they drafted and created, they defined plaintiffs as sworn employees. They defined plaintiffs as peace officers, sworn police officers with arrest powers under the criminal code, and by the way, if the plaintiffs weren't sworn and were not police officers, I am sure there are more than a few inmates that would come to this court and argue about the legitimacy of their arrest and their subsequent incarceration. Under the FLSA, under the federal statutes, they also qualified and classified the plaintiffs as sheriff's law enforcement employees when it benefited them to not pay out overtime. Even when looking at the county's code, the plaintiffs should have been defined as sheriff's law enforcement employees. Under the county's code, the defendants argue that before, and this is a quote, entering upon the duties of the office of deputy sheriff, one has to take an oath. In its simplest form, the defendants have argued, you can't get to B, entering upon the duties of sheriff, without A, taking an oath. The problem with their argument is that they've stipulated in 80 factual stipulations that the plaintiffs in this case were charged with the same authority and entered upon the exact same duties as other ADF, the detention facility employees, and other patrol deputies that are receiving and were receiving slept during the relevant period of time. If plaintiffs had to take an oath before performing these duties, and they undisputably are performing these duties, the plaintiffs have de facto taken that oath. Again, in its simplest form, plaintiffs could not have gotten to B, performing the duties of a deputy sheriff, without A, taking the oath. The one and only notable time that defendants denied that plaintiffs were sworn or denied that they were law enforcement employees was when they sought SLEP eligibility before 2005. The defendants premise much of their case on the allegation that plaintiffs did not take a written oath of office, and therefore they're not sheriff's law enforcement employees. This argument is unpersuasive for several reasons. First, and this is a very important point, there are certain plaintiffs in this litigation who in fact did have a written oath. They took a written oath long before this litigation ever ensued, long before 2005. And to this day, they are still being denied access to SLEP eligibility before 2005. Defendants have known about these employees through this litigation for at least the last six years, and for the last six years have taken no action to correct the issue here. Even the defendants don't believe that a written oath is dispositive in this case, because if it were, those plaintiffs would have been covered by SLEP as soon as the sheriff was made aware of it. How many of those plaintiffs are there? There are approximately six that we know of. Because only four are identified. I think the parties agree, and I think in the brief that was submitted by the employer, they talk about six. They said six, but there's no identification and there's no open record, I don't think, for two of them. We weren't sure. I don't know that for our purposes whether that's determinative, because whether it was four or six, they still have not correctly put them into SLEP eligibility before 2005. Secondly, throughout the defendant's brief before this court and throughout the lower proceedings in the lower court, they have repeatedly quoted a written oath, a quote, specific written oath. But in this six years of litigation, they have never once cited to a statute, a rule, a regulation, a policy that uses the term, quote, unquote, written oath. The reason they haven't been able to cite to anything that says, quote, unquote, written oath, is because there simply is no such requirement. The county code, which the defendants rely upon, does not use the term written oath. The IMRF rules and regulations, which I'll get to in a minute, even if the court considers that, those rules and regulations do not refer to a, quote, unquote, written oath. Even the defendant's counsel, Mr. Mock, related that IMRF stated that it would simply take the county's word for it, that these individuals were sworn. Now, the defendant's ministerial preference to have a written oath does not convert that into a statutory mandate. Your Honors, even if you find that a written oath is required as a prerequisite for membership in SLEP, the defendants cannot arbitrarily withhold that prerequisite. Again, the arbitrariness of their conduct in this case can be seen in several ways. I refer again to, whether it's the four or the six, Your Honor, individuals. These individuals, for no explicable reason, were given a written oath, while all other plaintiffs were not given the same oath. To this day, defendants have never explained why that is, because they can't. Why they did what they did is completely arbitrary and capricious. Second, when the plaintiffs were issued oaths in 2005, absolutely nothing changed about what they did, the authority they had, the job duties and responsibilities they had, and the risk they took in serving the county. Administration of a written oath in 2005 simply changed nothing. Now, we're not stating that an oath is completely irrelevant. What we are stating is that they were already granted the power years before and granted the authority and exercised that authority and that power long before 2005. An actual physical piece of paper was not necessary for them to be granted the authority, as evidenced by the stipulations entered into by the defendants. They stipulate they did the exact same thing as the gentleman or the woman standing next to them, performing the exact same job responsibilities with the same authority. Withholding a piece of paper, literally a piece of paper, that simply reaffirmed something that these plaintiffs had been already doing for decades is arbitrary. Withholding a piece of paper, and we're not talking about what's contained on that piece of paper, but literally withholding a piece of paper is arbitrary and capricious. Now, there are a couple of cases that touched upon how to define sheriff's law enforcement employee. The first case was the Fallon case. And in that case, the Fallon court had before the plaintiff's eligibility for benefits under the Public Safety Employee Benefits Act. And in interpreting that, the Fallon court looked at the pension code. The dispositive issue for the Fallon court was whether or not the plaintiff in that case was governed by the Merit Commission. And the court found if you're governed by the Merit Commission, ergo, you're a sheriff's law enforcement employee. And in that case, that was dispositive. They never talked about a sworn oath, never indicated that that was a requirement or a mandate or a prerequisite to being defined as a sheriff's law enforcement employee. Now, we recognize that was an interpretation. They looked at the pension code as an interpretive guide for interpretation under the insurance code. But that being said, the dispositive issue for them had nothing to do with an oath. It was all about governance under the Merit Commission. And undisputably, the plaintiffs in this case were hired, promoted, disciplined under the Will County Merit Commission. The second case is the Roach case, which specifically dealt with defining sheriff's law enforcement employees under the pension code and interpreting the pension code. And I think that you need to consider the history in Roach. In Roach, in 1981, the employees began performing duties in the Civil Process and Warrants Division in Lake County. And in 1981, they said, hey, we should be included under this benefit plan. And the county agreed. They said, you're absolutely right, you should be included. About a decade later, in 1990, the plaintiffs in the Roach case came back and said there was a violation of the consent decree that was entered in that case. And the argument was the job duties that they performed before 1981, although different, were still eligible for SLEP benefits. Before 1981, the plaintiffs in Roach performed services in the Records, Radio, the Jail Department, among other things. The defendants want you to find that under Roach, the plaintiffs are ineligible for SLEP benefits. But the exact opposite is true. In Roach, the defining or the demarcation line was 1981. After 1981, they performed services that were SLEP eligible, and everybody agreed. Before 1981 was the disputed issue, when they performed entirely different job duties in different departments. In this case, the demarcation is 2005. The difference between the two cases is nothing changed about the job duties before 2005 and after 2005. They had the exact same job duties and authority. The important issue in Roach, what they found, was whether or not the plaintiffs, pre-1981, had taken on the duties of the deputy sheriff,  as commanded by the sheriff. If you apply that rationale and that reasoning to this case, again, the defendants have stipulated that the plaintiffs did take on the duties of the deputy sheriff, and were bound to perform the duties of the sheriff, as commanded by the sheriff's office. Thank you. Quickly, I'd like to just stress the arguments on the collective bargaining agreements. When looking at those arguments, the defendants have argued that the plaintiffs' labor representatives have waived their pre-2005 SLEP eligibility. In considering that argument, you have to look at the statutory limitations under which CBAs are negotiated. Section 7 of the Illinois Public Labor Relations Act specifically and very clearly states that the parties cannot bargain about matters quote, specifically provided for in other laws, or in violation of any other law. No one's arguing that the pension benefits are not provided in the pension code, and that is the very law that Section 7 prohibits the parties from abrogating. The parties even recognized this in their own collective bargaining agreement when they stated, nothing in the contract can eliminate or detract from statutory responsibilities. In addition, even if you ignore the contract language, it ignores Section 7, there's nothing in the contract at all that gives a clear or an unequivocal waiver of any benefits pre-2005. I also would like to quickly touch upon the latches argument as set forth in our briefs. The latches argument was raised in the second round of summary judgment. There was a previous summary judgment. It's a long procedural history why there was a second, but it was raised five years after this case was initially filed. The defendants argued they didn't know we were asking for equitable relief. We had five complaints filed in this case, essentially just adding plaintiffs, never changing the prayer for relief and never changing the theory of the case, where we asked for specific performance. Qualify us as SLEP-eligible employees. That was the nature of the case. It was equitable all along. We always asked for specific performance. It does have a monetary component because they have to properly fund the pension, but that is just a side note to the original claim, which was we need to be properly classified pre-2005 for SLEP benefits. Again, I ask this Court to consider what the defendants are asking in this case, and that is literally somebody has the exact same authority, the exact same responsibilities, performs the same duties with the same risks, but for some unknown and arbitrary reason, the person standing next to you gets a better benefit. We do not think the legislature ever intended such an arbitrary or an absurd result, and we ask that this case be reversed. Thank you, Ms. Angelou. Mr. Weiner. May it please the Court. I have been practicing 50 years and had over 300 appeals, and I have never been in a more beautiful courthouse or a more beautiful courtroom. It is just a privilege to be here. Very quickly, just addressing some points that were made, counsel for the plaintiffs contends that there was nothing requiring a writing here. You will see, and I will get to it in my argument, though, that Section 3-6009 of the County's Code says the appointment has to be in writing, signed by the sheriff, and the oath has to be subscribed to, not just taken. And filed. Obviously you can't file an oral oath in the office of the county clerk. Similarly, the IMRF rules and regulations require, under pages 20 of my brief, that not only have they been appointed by the sheriff, but number three, the third bullet point says the appointment must be in writing and signed by the sheriff, and then the next one, and take an oath or affirmation in the same form as required of the sheriff, which is to be filed in the office of the county clerk. It's inconceivable to me how someone could argue before you that a writing wasn't required as to both the oath and the appointment. But getting on with my argument, the plaintiff's case is based really on a syllogistic fallacy. It's not all men are created equal. It's a different one. I could best phrase it as follows. All full-time sworn and duly appointed county deputy sheriffs employed on a full-time basis in the rural county sheriff's office have membership in the IMRF select pension plan. Two, the plaintiffs perform essentially all of the same functions and duties of the sworn and duly appointed rural county deputy sheriff. And three, ergo, the plaintiffs are entitled to membership, which is what you have as a contractual right, I might add, not as an equitable right, as a contractual right under Article 13, Section 5. Ergo, the plaintiffs are entitled to membership in the IMRF select pension plan. The problem with this syllogism and the argument, like most faulty arguments, I might say, is that it is based upon a false premise, i.e., that because the plaintiff and his correctional officers, which I formerly knew as bluecoats or jailers, perform essentially the same duties and functions of the rural county deputy sheriff that they are a fortiori rural county deputy sheriffs. It just is illogical. It's a syllogism with a false premise and a false, obviously, conclusion. Now, plaintiffs further assert that, quote, the appellants balance the entirety of their case on the issuance of a, quote, piece of paper. Three times they make that argument in their briefs and they made it here today. A piece of paper. Plaintiffs want this court to ignore that a piece of paper as well as the other pieces of paper contained in the magnificent library, i.e., the laws and the constitutions, that require a piece, that the piece of paper is required in order to be a deputy county sheriff and able to qualify for membership in the Slot Pension Plan. And the other pieces of paper, i.e., the constitutional laws under which since the 1800s the county sheriff has had the sole and exclusive and absolute direction, the discretion, I mean, to appoint or not to appoint his or her deputy county sheriff and administer and file the required written oath of office. Just as we as attorneys here and you as judges administer our oaths of office and receive our licenses to practice law and to be judges. Those are pieces of paper. The Constitution itself under which they rely, Article 13, Section 5, is a piece of paper. To the part of the argument that opposing counsel made regarding withholding the oaths for certain employees, I mean, how do you address that? Are there certain of these jailers that are doing the functions of the deputy sheriffs that were given oaths to sign and some that were not? And who made the decision? I'm fully prepared to answer that question. Basically, during the course of the litigation it was discovered that there was either four or six and I don't remember the exact amount but the oaths that they took are in the record on the appeal. And I thought there were six. There may be 50, 60 of the plaintiffs. Those were appointments made by a prior sheriff or prior sheriffs actually because they go back quite a way and it never came out because we didn't have discovery on these particular issues as to what the circumstances were regarding that. All that being said, it does appear that there are four to six of the correctional officers that took an oath of office and assuming they comply with the rest of the six requirements because there are eight requirements altogether and I would assume but I can't make a representation that they may well meet those requirements. I think they would certainly meet the first four if you look at my page 20 of my brief I set out those eight requirements. I am a referee. Under the county's code, by the way that's the statutory rules of construction the county's code has to be construed in paramateria with the pension code with respect to this matter. But getting to your honor's point they may well be have qualified based upon even just the taking of the oath and being appointed in writing they may have qualified for membership in the slept pension plan. I think the case would have to be remanded to determine facts and circumstances and as well to determine possible defenses that may be asserted by the county and the sheriff with respect to their present claims such as latches or statute of limitations or waiver as discussed by counsel. So they're in a separate category I would readily admit to that. But your answer is it's just a different sheriff decided that he was going to allow or wanted them to have membership in SLEP? Correct. And that is the basis that there is no other requirement so I guess to extend that a sheriff could say I'm going to hire 60 and those with last names starting with L are going to be given an oath and the rest of you are going to do the same job but your benefits aren't going to be the same? Sure. There's no other basis for that? No, the sheriff has since 1812 I believe under the laws of Illinois somewhere in the 1800s under the 1870 constitution had the right and the sole and absolute discretion to appoint or not appoint the case is whole they have a right not to appoint they control the internal affairs of their offices the hiring and so the sheriff and that's not disputed that's not a disputed point by the plaintiffs so since the 1800s it seems pointed out by IMRF counsel that if you don't follow these statutory provisions we suggest that you don't enter them into SLEP until you consult your state's attorney so it doesn't say the statute is ironclad it just says we recommend do not do this because a court may have to determine whether or not they are qualified to be SLEP members so that to me seems to lend some credence to the notion of de facto membership Well if you look at that though in section 310 SLEP membership in order to participate they define it the deputy sheriff in order for deputy sheriff to participate each of the following criteria they do have that one phrase if there's a question consult the attorney which I think is good advice but there's also provision on page 21 jailers, those are the people we're talking about here and it says jailers who are not deputized as regular deputies are not eligible for the SLEP program Right So it says jailers ought to be enrolled as regular IMLF members if they meet the hourly standards, etc. You have to be a deputy sheriff Deputy sheriffs have to be administered in office and yes, you can determine there's nothing that I'm aware of that you can't, you can determine who will be a deputy sheriff and who will not. In fact in the Roche case the court acknowledged that there were two people side by side and it could happen that one would be in the plan and one would not be in the plan that's the sheriff's discretion it's only the sheriff, not the merit commission which only actually certifies people, doesn't swear people not the training gun law thing that applies to correctional officers as well as a deputy sheriff you have to be a deputy sheriff that's what it means the law provides that sheriff's law enforcement employees and I'm reading from 40 ILCS 5-7-109.3a1 a county sheriff and all deputies other than special deputies employed on a full time basis in the office of the sheriff that's what a SHLEP means it doesn't include that, it means that so you have to be a county sheriff the only way you can be a county sheriff is have the deputy county sheriff the only way you can do that is to have the county sheriff swear you under oath in writing and appoint you in writing period end of case the fact that the IMRF says you ought to consult with an attorney doesn't give them any substantive rights whatsoever it doesn't just say that you should consult with an attorney it says if your sheriff doesn't follow these explicit statutory provisions in appointing them it may be necessary to have a court determine whether or not they are qualified right, and here we are and here we are I'm not, you know they stated a cause of action of any kind a contract, equity or whatever but leaving that aside they're in court now, they're making their pitch they say we do all the same things therefore we're deputy sheriffs not true coulda, woulda, shoulda does not make them deputy county sheriffs, it just doesn't do it it's like the emperor's clothes you know, you can say it, they're deputy sheriffs, they're treated they're considered, they're classified they work here the same way, but they're not they're not deputy sheriffs until at least the two points written oath of office and written appointment that's the only way you can do it you can't bootstrap your way at working your way by what you do in your functions and duties to be a deputy sheriff nothing in the county code, nothing in the pension code and nothing in the IMF rules and regulations says anything about functions or duties or responsibilities performed by these people that's not what makes or doesn't make what breaks or doesn't break a county sheriff you have to be sworn under oath, you have to be appointed under oath and yes, you can have two people side by side one selected, one not selected you can have, and why? I don't think it would ever be on the basis of their letter first letter or last letter of their names but the point is, let's say, I don't think so but then what could it be? the point is, I guess it could be I guess it could be, because someone may say well you know, I've only got, this costs a lot of money to go into this select program, a substantial amount of money and I can only afford to put half of my sheriff's deputies on this I mean half of my correctional officers on this and make them deputy make the deputy sheriff swear them and appoint them in writing I can only afford that many, so therefore I'm taking that I'm doing, I'll put them in a hat I'll pull them out of a hat or I'll go from A to L and M to Z it doesn't matter it's the question of, you're talking about what the power of the sheriff is here and he has the sole authority to do that he has the authority to run internally his office this court is not the sheriff this court can't deputize these people it shouldn't, because that's left to the sheriff so I mean I think what you're trying to say is what if he acted arbitrarily and capriciously appointed his best friend or what if he just made a mistake and hired 20 sheriff's deputies and none of them had an oath and they worked for 20 years if they didn't you can't be a sheriff's deputy without the oath that's the point that was not signed, there was no oath they've all been sheriff's deputies not even this class of people it's completely different people out writing tickets for 20 years wait, there was never any oath what do you do, so they are not they don't have the enhanced one because they were never legally appointed as deputy county sheriff it's as simple as that I don't think you look behind the issue here there's statutory requirements and the statutory requirements you can't bootstrap your way in by performing the work of deputy sheriff even that does not qualify them what qualifies them is the oath and the appointment and that's up to the sheriff I believe that's the only way that these plans the slump pension plan has been in existence since July 1st, 1973 and the IMF rules and regulations mirror that law this court should therefore enforce that law all these laws by the way predate the employment of the plaintiffs so it's not like they're not getting they came and then it was changed like all these pension cases we're dealing with now under state law which your honors are intimately familiar with I'm sure and it's not that way at all so I was only pursuant to the collective arguments and by the way for the consideration of reduced wages that these people were placed at all in 2005 and 2006 and I think this case really falls under the old rubric or idiom I guess it is no good deed goes unpunished because it was then and there that they became deputy sheriffs other than the four to six that we were talking about previously that's when they became it and that's when they were entitled because that's when they were sworn that's when they were all sworn you have the oaths that they were sworn to that's when they were all appointed both in writing complying with the law and IMRF was advised now were members of the SLEP SLEP pension plan that's when they became members and that's when they were entitled to it that was their right under the constitution the minute they became eligible for membership in that pension plan that's when they had statutory rights equivalent of contract rights which could not be impaired or diminished under article 13 section 5 of the constitution and finally we just believe there would be serious adverse consequences economically for every county if the court rules reverses the decision thank you Ms. Angelucci any rebuttal I just wanted to touch a point on the last statement made by counsel that if this case is reversed every single county would have huge liabilities and he's marching out a parade of horribles the deputies in any county in this state do not have control over the job duties that they perform the sheriffs do but the sheriffs can control whether or not they are covered by SLEP by determining whether or not they have the authority to enter into the performing the job duties of the office of deputy sheriff next I wanted to argue the back and forth that was just had about could you say people from A to H get a written oath and everybody else doesn't and the response is yes that could happen that proves the arbitrariness of the defendant's case and he also talked about arguments about us saying a piece of paper like I said we're not saying that an oath is irrelevant but what we're saying is the oath that was on that piece of paper that gave these plaintiffs the authority to enter into the job duties of the office of deputy sheriff was de facto they did everything as if they had that oath and they should not be penalized now because even though they had that oath and performed all the duties that that oath prescribes them just because they didn't have a piece of paper reaffirming the oath that they had been acting under for decades that's what's arbitrary the defendants also argue that the sheriff has sole discretion to hire deputies our position is that the plaintiffs were deputies we're not saying that the sheriff has to go out and hire 20 deputies or not hire certain people we're saying when these plaintiffs were hired and when they entered into the performance of the duties that the sheriff granted them the authority to do they were deputies for the first time today we're hearing that the plaintiffs are jailers they've never raised that argument before even if and when you look at the IMRF rules which we do not believe are controlling the Roche court found them not persuasive unsound and inapplicable but even if you look at that first, as Justice O'Brien correctly noted there's a caveat we may have to come before the court to determine this is a guideline it's not controlling and it's not dispositive also in Roche the defendants continually say that Roche holds that two people can be working side by side performing the exact same job duties and it would be totally fine for one to be self-eligible and one not to be Roche in no way shape or form ever holds that proposition what Roche said is that a jailer and a deputy sheriff are not mutually exclusive you can be a jailer and a deputy sheriff at the same time so even if this newfangled argument about the plaintiffs being jailers is adopted by the court that doesn't mean that they're not also deputy sheriffs at the same time thank you the other point I wanted to make is that the defendants counsel argues that the plaintiffs perform essentially the same job duties that's not the case they perform the exact same job duties and one thing that I think needs to be highlighted is that there were sheriff's deputies that got slapped pre-2005 that worked in the detention facility and there were patrol deputies the ones that we performed the exact same job duties of were the, by the defendant's own admission the sheriff's deputies working in the adult detention facility literally working side by side engaging in the same competitive bidding process the plaintiffs were physicians, same authority supervisors were interchangeable everything was the same and there was no difference other than, again, this written oath that was arbitrarily and capriciously not given to some plaintiffs and granted to others we ask that all plaintiffs be treated equitably in this case and not just the four or six being remanded but that all of the sheriff's deputies and all of the plaintiffs in this case be found to be eligible pre-2005 thank you, your honors thank you we thank you for your arguments this afternoon we'll take the matter under advisement and we'll issue a written decision as quickly as possible